IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA**

v.  Case No. 3:00cr63

**EILEEN KATHERINE EVANS,**

**Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Eileen Katherine Evans's Motion for Compassionate Release (the "Motion"). (ECF No. 30.) Evans asks the Court "to grant her compassionate release under 18 U.S.C. § 3582(c)(1)(A), and order her term of supervised release to begin immediately." (Mot. 1, ECF No. 30.) The United States responded in opposition, asking the Court to deny the Motion because "compassionate release in this case would fail to address a range of important practical and legal problems and would not satisfy the standards in § 3582(c)(1)(A)" (the "Opposition"). (Opp'n 2, ECF No. 33.) On August 3, 2020, Evans replied to the United States' response in opposition (the "Reply"). (Reply, ECF No. 34.)

This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny without prejudice Evans's Motion for Compassionate Release.

### I. Background

On February 24, 2000, the United States indicted Evans with Bank Robbery, in violation of 18 U.S.C. § 2113(a) and (d) ("Count One"). (PSR ¶ 1.) On April 14, 2000, Evan pled guilty to Count One before United States District Judge Richard L. Williams. (*Id.* ¶ 2.) Evans admitted

to robbing a Union Bank and Trust Company branch by walking around a customer service representative's (CSR) desk, taking "the CSR by the arm," and telling the CSR to "Get Up." (*Id.* ¶ 5.) "Inside the defendant's purse, in plain view to the CSR, was a large knife." (*Id.*) "According to Union Bank and Trust Company, the loss amount for the bank robbery [was] $1,765." (*Id.* ¶ 9.) Around this same time, local police identified Evans as a suspect in the robberies of (1) a Walgreen's Pharmacy in Henrico County, Virginia; (2) a Food Lion in Ashland, Virginia; and, (3) a Hanover House Texaco in Hanover County, Virginia. (*Id.* ¶ 6.)

The Presentence Report ("PSR") calculated a Sentencing Guidelines Range of 84-105 months' imprisonment, after determining that Evans faced an Offense Level of 22 and Criminal History Category VI. (PSR 23, ECF No. 23.) Evans's criminal history included convictions for grand larceny, accessory after the fact to possession of cocaine, and robbery. (PSR 6–9.)

On June 29, 2000, the Honorable Richard L. Williams, United States District Judge for the Eastern District of Virginia, imposed a sentence of eighty-four months of incarceration, the low end of the Guidelines range, and five years of supervised release. (J., ECF No. 11). "Due to other sentences imposed for robbery convictions in the Circuit Courts in Hanover and Henrico, Virginia, Ms. Evans was not placed into [Bureau of Prisons'] custody until October 1, 2018," eighteen years after her state sentence. (Probation Officer's R. 1.) Evans "is currently incarcerated at FPC Alderson, a minimum security prison in Alderson, West Virginia." (Opp'n 3.) On July 15, 2020, Evans filed the instant Motion, seeking compassionate release. (*See generally* Mot.) On July 29, 2020, the United States responded opposing Evan's Motion. (*See generally* Opp'n.) On August 3, 2020, Evans filed a Reply. (*See generally* Reply.) The Court now considers the pending Motion.

2

## II. Legal Standard:
## Compassionate Release Under the First Step Act of 2018

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). As a preliminary matter, a petitioner generally must "exhaust his or her administrative remedies prior to bringing a motion before the district court." *Poulios v. United States*, No. 2:09-cr-109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 20, 2020).

### A. Exhaustion of Administrative Remedies

Although the Court generally cannot modify a term of imprisonment once it has been imposed, the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[1] 18 U.S.C. § 3582(c)(1)(A).

---

[1] Section 3582 itself contemplates the potentially urgent nature of compassionate release decisions and does not provide an exception for exigent circumstances, such as the current COVID-19 pandemic. *See* 18 U.S.C. § 3582(c)(1)(A). Unlike many other statutory exhaustion provisions that require exhaustion of all administrative remedies before a claim can be brought before the court, Section 3582 provides an alternative: exhaustion of all administrative rights "or the lapse of 30 days from the warden's receipt" of the inmate's request for compassionate

"Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18-cr-4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020).

The court may waive the exhaustion requirement, however, in certain circumstances. *United States v. Jones*, No. 3:11-cr-249, ECF No. 47, at *2–3 (E.D. Va. Apr. 3, 2020) (Lauck, J.) Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]" "'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of agency review would subject the petitioner to undue prejudice.'" *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v. United States*, No. 2:09-cr-109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020)).

Throughout the country, courts have found the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement. *See United States v. Zukerman*, No. 16 Cr. 194, 2020 WL 1659880, at *1, 3 (S.D.N.Y. Apr. 3, 2020) (holding that defendant's elderly age and serious health conditions warrant a waiver of exhaustion requirements because of the ongoing risk of infection while incarcerated); *United States v. Perez*, No. 17 Cr. 513-3, 2020 WL 1456422, at *3 (S.D.N.Y. Apr. 1, 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

---

release, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)) (emphasis added). This alternative suggests that Congress recognized that even if compassionate release requests cannot always await the full administrative process to be completed, the Bureau of Prisons should have at least 30 days to act on such a request.

4

**B.     Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release**

After finding either that the petitioner meets the exhaustion requirement or that the situation justifies waiver, courts assess the merits of a motion for compassionate release under three prongs: (1) whether extraordinary and compelling reasons exist; (2) whether the defendant poses a danger to the community; (3) and, whether the factors in 18 U.S.C. § 3553(a)[2] would allow for a reduction in sentence. *See, e.g., Delacruz v. United States*, No. 18-cv-811-LM, 2020 WL 3270503, at *1 (D.N.H. June 17, 2020); *United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *2 (E.D.N.C. May 6, 2020). The United States Sentencing Commission defines "extraordinary and compelling" in the Application Note 1 of U.S.S.G. § 1B1.13[3] and

---

[2] Section 3553(a) provides, in relevant part:

> The court shall impose a sentence sufficient, but not greater than necessary . . . . The court, in determining a particular sentence to be imposed, shall consider—
>
> (1) the nature and circumstance of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crime of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effect manner[] . . . .

18 U.S.C. § 3553(a).

[3] 1. Extraordinary and Compelling Reasons . . . .
(A) Medical Condition of the Defendant.
> (i) The defendant is suffering from a terminal illness . . . .
> (ii) The defendant is
> > (I) suffering from a serious physical or medical condition,
> > (II) suffering from a serious functional or cognitive impairment, or
> > (III) experiencing deteriorating physical or mental health because of the aging process[] that substantially diminishes the ability of the

states "that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances." *Poulios*, 2020 WL 1922775, at *2 (citing U.S.S.G. §1B1.13, n.1 (A)–(C)). The same application note references a "catch-all provision that allows for a sentence modification upon a showing of [a different] extraordinary and compelling reason." *Id.* (internal quotation marks omitted) (citing U.S.S.G. § 1B1.13, n.1 (D)).

During the COVID-19 pandemic, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his [or her] prison facility." *Feiling*, 2020 WL 1821457, at *7 (citing *United States v. Dungee*, No. 7:15cr00005, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020); *United States v. Edwards*, 6:17cr00003, 2020 WL 1650406, at *5 (W.D. Va. Apr. 2, 2020)). "Notably, 'the fear of contracting a communicable disease' proves insufficient to justify a sentence modification." *Id.* (emphasis omitted) (quoting *United States v. Clark*, No. 17-85-SDD-RLB, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020)). After finding whether extraordinary and compelling reasons exist and warrant a reduction of a sentence, the Court must consider the factors set forth in 18 U.S.C. § 3553(A), 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-

---

> defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant . . . .
> (C) Family Circumstances . . . .
> (D) Other Reasons.
> > As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, n.1 (A)–(D).

conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)).

### III. Analysis

Although Evans sufficiently exhausted her administrative remedies and does not pose a danger to the community, the Court will deny her Motion because FPC Alderson does not currently face a COVID-19 outbreak and the statutory sentencing factors weigh against granting Compassionate Release.

#### A. Evans Meets the Exhaustive Requirement Because the Warden at FPC Alderson Received Her Request Over Thirty Days Ago

Evans met the exhaustion requirement before seeking relief from this Court. Generally, a defendant must exhaust "all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier" before a court can modify a sentence. 18 U.S.C. § 3582(c)(A)(1). On June 10, 2020, Evans submitted her request to the Warden of FPC Alderson "asking for [c]ompassionate release under the COV[I]D-19." (Opp'n Exhibit 2 "Inmate Request to Staff," ECF No. 33-2.) Twenty days later, on June 30, 2020, the Warden denied her request for compassionate release. (Opp'n Exhibit 3 "Denial Letter," ECF No. 33-3.) Roughly three weeks later, on July 15, 2020, Evans filed the instant Motion.[4] (*See* Mot.) Thus, the Court agrees with Evans that she "satisfies the § 3582(c)'s 30-day-waiting period." (Mot. 20.) With this requirement satisfied, the Court now addresses the merits of Evans's Motion for Compassionate Release and will analyze each prong in turn.

---

[4] The United States does not directly address the exhaustion requirement, but it acknowledges the aforementioned timeline and does not claim that this Court lacks authority over the Motion. (*See* Opp'n 3.)

### B. Evans's Medical Conditions Constitute "Extraordinary and Compelling" Reasons for a Reduction in Sentence but the Conditions at FPC Alderson Do Not Present a Particularized Risk to Evans for Contracting the Virus

Evans fails to satisfy the first prong of a compassionate release analysis because, although her medical conditions likely increase the risks COVID-19 poses to her, she advances only a generalized fear of contracting COVID-19. *See Feiling*, 2020 WL 1821457, at *7.

As an initial matter, courts have recognized that the COVID-19 pandemic can create an extraordinary and compelling reason for a sentence reduction where, absent the pandemic, the same medical conditions alone would not suffice. *See e.g., Dinning v. United States*, 2020 Nos. 2:12-cr-84, 2:12-cr-140, 2020 WL 1889361, at *2 (E.D. Va. Apr. 16, 2020) ("[T]he confluence of a petitioner's medical conditions and the COVID-19 pandemic may constitute an extraordinary and compelling reason for sentence modification under the catch-all provision, even when a petitioner's medical conditions would not qualify under Application Note 1 [of U.S.S.G. § 1B1.13.]") (internal quotation marks and citation omitted); *United States v. Rodriguez*, No. 2:03-cr-00271, 2020 WL 1627331, at *11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—[the defendant's] health problems, proximity to this release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence.").

In addition to considering the potential effects a defendant's medical conditions may have on his or her complications from any future contraction of COVID-19—"the particularized susceptibility," a court should also consider the prevalence of COVID-19 in a defendant's prison facility—"the particularized risk." *Feiling*, 2020 WL 1821457, at *7; *see also United States v. Campos-Ramenthol*, 805 F. App'x 328, 329–30 (5th Cir. 2020) (affirming a district court's

denial of a motion made by a defendant with diabetes and heart failure to "revoke or amend" his detention order because, in part, "there were no reported cases of COVID-19 at the jail").

In the instant case, the Parties agree that Evans's circumstances constitute an "extraordinary and compelling reasons as envisioned by" Application Note 1 of U.S.S.G. § 1B1.13. (Opp'n 9); (*see* Mot. 21–23.) The Court recognizes that Evans's underlying health conditions heighten her risk of complications from COVID-19. Specifically, Evans's Type 2 diabetes mellitus, Body Mass Index (BMI) of 36.4, and hypertension represent areas of concern.[5] (*See e.g.*, Mot. 3–8); (Mot. Exhibit 1 "Medical Records" 2, 14, ECF No. 30-1.) The Centers for Disease Control (CDC) lists Type 2 diabetes mellitus and a BMI over 30 as conditions that that "increase[] [the] risk of severe illness from COVID-19" for individuals "of any age." *People of Any Age with Underlying Medical Conditions*, CORONAVIRUS DISEASE 2019 (COVID-19), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited July 30, 2020.) The CDC lists hypertension as a condition that "might . . . increase[] [the] risk for severe illness from COVID-19." *Id.*; *see also Robinson*, 2020 WL 4041436, at *5 ("hypertension is one of the most common 'comorbidities' in people who experience severe cases of COVID-19"). Thus, Evans establishes that she may have "a particularized susceptibility" to COVID-19 because of her underlying medical conditions. *Feiling*, 2020 WL 1821457, at *7.

Evans fails to fully show an extraordinary and compelling reason for compassionate release, however, because she does not face "a particularized risk" of contracting the virus. *Id.*

---

[5] The Court also notes that Evans has a history of breast cancer after being diagnosed with it in "2016 while in [Virginia Department of Correction's] custody." (Mot. 8.) Evans most recently received a "mammogram on January 27, 2020" that "[was] negative for growths." (*Id.* 9.)

The Bureau of Prisons reports that 107 inmates have been tested for COVID-19 at FPC Alderson, Evans's prison facility, and zero inmates have tested positive. *COVID-19 Inmate Test Information*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Aug. 31, 2020). Other district courts within the jurisdiction of the United States Court of Appeals for the Fourth Circuit have noted an absence of extraordinary and compelling circumstances for inmates housed at FPC Alderson based on the lack of COVID-19 cases at that facility. *See, e.g., United States v. Carter*, No. CR 5:17-00113-002, 2020 WL 4679417, at *3 (S.D.W. Va. Aug. 12, 2020) (lack of COVID-19 cases at FPC Alderson presents "a bar against compassionate release"); *United States v. Varens*, No. 5:18-CR-00027, 2020 WL 4227563, at *3 (W.D. Va. July 22, 2020) ("Varens is not subject to a particularized risk of contracting the virus at FPC Alderson, which is currently not reporting any positive cases.") Thus, the current record demonstrates that Evans advances only a "fear" of contracting COVID-19, which will not suffice as an "extraordinary and compelling" reason for sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

### C. Evans Does Not Pose a Danger to the Community

Evans satisfies the second prong of the compassionate release analysis because she does not pose a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. For this prong, Evans supports her argument that she does not pose a danger to the community by noting that the Virginia Department of Corrections "granted her geriatric parole and released her in October 2018, nearly three years" before she "was scheduled to be released." (Mot. 24.) "[W]hen deciding whether to grant parole," the "Virginia Parole Board considers" whether the defendant presents any "risk to the community." (*Id.* 25.)

10

The United States does not directly address this factor. (*See generally* Opp'n.) It does recognize that Evans "has not incurred any infractions while incarcerated at FCP Alderson." (*Id.* 3.); (*see also* Mot. Exhibit 4 "Evans's Disciplinary Record" 2, ECF No. 30-4). The United States suggests that Evans "does not have a release plan that ensures that she and the community are safe" with respect to the ongoing COVID-19 pandemic. (*Id.* 10 (internal quotation marks and citation omitted).) This statement, however, refers only to speculative health concerns. It does not speak to any concerns of "*danger* to the safety of any other person or to the community." U.S.S.G. § 1B1.13 (emphasis added). Because no evidence before the Court suggests that Evans presents "a danger to the safety of any other person or to the community," Evans satisfies this second prong. *Id.*

> **D. Even If Evans Satisfied the "Extraordinary and Compelling" Prong for Compassionate Release, Her History and Characteristics, the Seriousness of the Offense, and the Need to Provide Just Punishment and Afford Adequate Deterrence Weigh Against Granting the Motion**

Evans fails to satisfy the third prong to gain compassionate release because the Section 3553(a) factors weigh against it. *See* 18 U.S.C. § 3582 (c)(1)(A); U.S.S.G. § 1B1.13.

Evans contends that she satisfies this prong because she "has . . . been working and participating in programs" since entering the custody of the Bureau of Prisons. (Mot. 25.) Evans asks this Court to recognize that "she has accepted" punishment "for the last 20 years" and now "deserves to live in society once again." (*Id.*) Her release plan includes living with her sister and her sister's husband, "who is in poor health." (*Id.*)

In response, the United States argues that the Section 3553(a) factors "counsel against granting a reduction in [Evans's] sentence." (Opp'n 11.) The United States notes that Evans "committed a clear crime of violence" when she robbed Union Bank and Trust Company with a knife. (*Id.*) As the record demonstrates, Evans committed a series of robberies "as a mature

11

adult" and "while under a term of supervised release in the state." (*Id.* 12.) The United States also notes that Evans "has served less than thirty percent of her federal sentence." (*Id.* 12.)

The Court concludes that the Section 3553(a) factors counsel against granting compassionate release. First, the Court considers Evans's "history and characteristics." 18 U.S.C. § 3553(a)(1). The Court recognizes Evans pled guilty to one count of Bank Robbery. (*See* PSR ¶ 2.) But, in considering Evans's history, the Court must also acknowledge the larger pattern of behavior Evans's other convictions reveal. Evans "committed a series of five violent armed robberies over the span of a year." (Opp'n 1.) This followed numerous convictions over the prior two decades. (PSR ¶¶ 18–37.) At forty-two years old, Evans came before the Court with a Criminal History Category of VI after committing a variety of offenses as an adult. (*Id.* ¶ 79.)

Second, the Court considers the "seriousness of the offense." 18 U.S.C. § 3553(a)(2)(A). Evans robbed Union Bank and Trust Company of $1,765 with "a large knife." (PSR ¶¶ 5, 9.) Evans's crime of violence does not weigh in favor of granting release.

Finally, Evans has served approximately twenty-two months of her eighty-four-month federal sentence. (*See* Mot. 2); (Opp'n 3.) Release at this time, after serving well under half of her sentence, would not "provide just punishment" or "afford adequate deterrence" for like offenses.[6] 18 U.S.C. § 3553(a)(2)(A)–(B). District courts within the jurisdiction of the Fourth

---

[6] In her Reply, Evans remarks on the fact that she committed a series of robberies, for which three different jurisdictions prosecuted her. Evans asserts that

> [h]ad [she] been sentenced for all five robberies in federal court, the United States Sentencing Guidelines would have been higher than for her sole bank robbery. While defense counsel cannot calculate what would have been the official guidelines for all five robberies, counsel assumes that 5 units would have been added for a combined adjusted offense level of 30, minus 3 for acceptance of responsibility, for a total of 27. With the same criminal history category of VI, her guidelines would have been 130 to 162 months. Since Ms. Evans was sentenced

12

Circuit have considered the length of time served an important factor when ruling on motions for compassionate release during the COVID-19 pandemic. *See e.g.*, *Robinson*, 2020 WL 4041436, at *7 (granting compassionate release to a defendant who "served the overwhelming majority of his sentence"); *United States v. Johnson*, No. JKB-14-356, 2020 WL 3316221, at *1 (D. Md. June 17, 2020) (granting compassionate release to a defendant "sentenced to a period of 102 months' imprisonment" who has a "current projected release date [of] October 2, 2020"); *United States v. Bright*, No. 2:15CR00015-005, 2020 WL 2537508, at *2 (W.D. Va. May 19, 2020) (granting compassionate release to a defendant who "has served over 75 percent of his 84-month sentence").

This Court notes the importance of considering the amount of time served. Granting Evans's motion for compassionate release would reduce her sentence by approximately sixty-two months. While seeing that Evans served eighteen years for similar robberies in *state* facilities prior to entering Alderson, the Court is constrained to find that such a significant reduction would not provide "just punishment" or offer "adequate deterrence" to the serious criminal conduct underlying Evans's current *federal* sentence. 18 U.S.C. § 3553(a)(2)(A)–(B).

In sum, although Evans's health concerns present an "extraordinary and compelling reason" for granting compassionate release, she does not currently face "a particularized risk" of contracting the virus at Alderson and the Section 3553(a) factors weigh against granting Evans compassionate release.

---

by three jurisdictions instead of one, she has been incarcerated for approximately 247 months.

(Reply 10 n.13, ECF No. 34.) The Court lacks sufficient information regarding Evans's other robberies to verify the merit of this argument. The Court cannot discern from the record why three jurisdictions elected to prosecute Evans for this series of robberies that were relatively close in time.

## IV. Conclusion

For the foregoing reasons, the Court will deny without prejudice Evans's Motion for Compassionate Release. (ECF No. 30.)

An accompanying order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: August 31, 2020
Richmond, Virginia