IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA**

v.  Case No. 3:00cr63

**EILEEN KATHERINE EVANS,**

    **Defendant.**

### MEMORANDUM OPINION

This matter comes before the Court on Defendant Eileen Katherine Evans's Emergency Renewed Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (the "Motion"). (ECF No. 37.) The United States filed a response in opposition, (the "Opposition"), (ECF No. 39), and Evans filed a reply (the "Reply") (ECF No. 40). This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will grant the Motion.

### I. Background

On February 24, 2000, an Eastern District of Virginia Grand Jury indicted Evans with Bank Robbery, in violation of 18 U.S.C. § 2113(a) and (d) ("Count One"). (PSR ¶ 1, ECF No. 23.) On April 14, 2000, Evans pled guilty to Count One before United States District Judge Richard L. Williams. (*Id.* ¶ 2.) In pleading guilty, Evans admitted to robbing a Union Bank and Trust Company branch by walking around a customer service representative's (CSR) desk, taking "the CSR by the arm," and telling the CSR to "Get Up." (*Id.* ¶ 5.) "Inside the defendant's purse, in plain view to the CSR, was a large knife." (*Id.*) "According to Union Bank and Trust Company, the loss amount for the bank robbery [was] $1,765." (*Id.* ¶ 9.) Around this same

time, local police identified Evans as a suspect in the robberies of (1) a Walgreen's Pharmacy in Henrico County, Virginia; (2) a Food Lion in Ashland, Virginia; and, (3) a Hanover House Texaco in Hanover County, Virginia. (*Id.* ¶ 6.) The robberies occurred over a six week period between December 5, 1999, and January 16, 2000. (Presentence Report "PSR" ¶¶ 5, 6, 28, ECF No. 23.)

After determining that Evans faced an Offense Level of 22 and Criminal History Category VI, the Presentence Report calculated a Sentencing Guidelines Range of 84–105 months' imprisonment[1] (PSR 22.) Evans's criminal history included convictions for grand larceny,[2] accessory after the fact to possession of cocaine, and robbery. (PSR 6–9.)

On June 29, 2000, the Court imposed a sentence of eighty-four months of incarceration, the low end of the Guidelines range, and five years of supervised release. (J., ECF No. 11). After being sentenced in federal court, Hanover County sentenced Evans to 20 years of incarceration and Henrico County sentenced Evans to 25 years of incarceration. (Mot. Comp. Release 3 n.4, ECF No. 30.) In 2018, the Commonwealth of Virginia "granted [Evans] geriatric parole based on her long-term good conduct and notable changes." (Reply 18, ECF No. 40.) "Due to other sentences imposed for robbery convictions in the Circuit Courts in Hanover and Henrico, Virginia, Ms. Evans was not placed into [Bureau of Prisons'] custody until October 1,

---

[1] Prior to 2005, the Sentencing Guidelines were considered mandatory. *See United States v. Booker*, 543 U.S. 220 (2005).

[2] In 2018, Virginia raised its grand larceny threshold from $200 to $500. In 2020, Virginia doubled its grand larceny threshold, raising it from $500 to $1,000. Caleb Stewart, *Va. Governor signs law to double grand larceny threshold*, March 4, 2020, https://www.nbc12.com/2020/03/05/va-governor-signs-law-double-grand-larceny-theshold/. One of Evans's grand larceny convictions involved misappropriate funds worth $3,000 in a check cashing scheme. (PSR ¶ 20.) Evans "stole property valued over $200 from Bojangles" in another grand larceny conviction. (PSR ¶ 22.)

2018," eighteen years after Judge Richard L. Williams sentenced her. (Probation Officer's R. 1, ECF No. 31.)

Evans "is currently incarcerated at FPC Alderson, a minimum security prison in Alderson, West Virginia." (Opp'n 3, ECF No. 32.) Evans has served roughly 25 months of her 84–month sentence. (Probation Officer's R. 1.) Evans is scheduled for release on September 17, 2024, more than twenty-four years after she appeared before this Court for sentencing. *See* Bureau of Prisons, *Fed. Inmate Search*, https://www.bop.gov/inmateloc/.

On July 15, 2020, Evans filed a Motion for Compassionate Release. (ECF No. 30.) The United States responded in opposition to Evan's Motion, (ECF No. 32), and Evans replied. (ECF No. 34.) In the Motion for Compassionate Release, Evans claimed she "suffers from several medical conditions that place her at risk of severe complications from COVID-19. She is diabetic, hypertensive (plus high cholesterol), has a BMI over 30, and has a history of breast cancer that BOP is not properly monitoring." (Mot. Comp. Release 3, ECF No. 30.) The United States agreed that Evans' health issues constituted "extraordinary and compelling reasons as envisioned by [United States Sentencing Guidelines § 1B1.13 cmt. n. 1(a)(ii)(I)." (Opp'n 9, ECF No. 32.) Nonetheless, the United States argued that her health concerns did not "make her appropriate for release . . . when there are no cases of COVID-19 at a particular facility." (*Id.*)

On August 31, 2020, the Court denied Evans's Motion for Compassionate Release without prejudice after finding that she did not present a particularized risk for contracting COVID-19 because, at that time, FPC Alderson reported zero cases of the virus. (Aug. 31, 2020 Mem. Op. 8, ECF No. 35.) The Court also found that the § 3553(a) sentencing factors weighed against granting relief to Evans because "[g]ranting Evans's motion for compassionate release would reduce her sentence by approximately sixty-two months. While seeing that Evans served

eighteen years for similar robberies in *state* facilities prior to entering Alderson, the Court is constrained to find that such a significant reduction would not provide 'just punishment' or offer 'adequate deterrence' to the serious criminal conduct underlying Evans's current *federal* sentence." (*Id.* 13.)

On October 16, 2020, Evans filed the instant Emergency Renewed Motion for Compassionate Release. In the Motion, Evans asserts "[t]he danger to Ms. Evans is no longer speculative; with the virus's presence in the facility, the danger to Ms. Evans is particularized, and her life is in danger." (Mot. 1, ECF No. 37.) Evans claims "the rapid and substantial developments in caselaw relating to compassionate release support release under the sentencing factors." (*Id.*) Evans reiterates her health concerns, including that she has Type 2 diabetes mellitus, a Body Mass Index of 36.4, hypertension, and breast cancer that the "BOP is not properly monitoring." (*Id.*) Evans further illuminates her release plan, explaining that if the Court grants the Motion she plans to live with her sister and her sister's husband in rural West Virginia. (Reply 16–17, ECF No. 40.) Her sister has been married to the same person for twenty-eight years. (*Id.*) While acknowledging that her sister's husband has a felony conviction, the conviction "predates their marriage – it occurred in the 1980s and involved forgery." (*Id.*)

The United States opposes the Motion, arguing that Evans must first re-exhaust her administrative remedies before she may seek relief in federal court. (Opp'n 5, ECF No. 39.) The United States explains that Evans submitted a written request for compassionate release to the warden on June 10, 2020, the warden denied her request on June 30, 2020, and she has not submitted another request since that time. (Opp'n 4–5.) The United States further argues that "with five [COVID-19 cases], the reality of the defendant's situation has not changed for the purposes of this Court's analysis. The United States maintains that Evans "still does not face a

4

particularized risk of contracting the virus at FPC Alderson because of five cases out of 547 inmates." (*Id.* 19.) The United States asserts that Evans's release plan will not reduce her risk of contracting the virus because West Virginia's statewide COVID-19 cases have significantly risen in number. (*Id.* 20.) The United States claims that "[e]ven if defendant had a release plan that mitigated her and the community's exposure risk, her release is not warranted in view of her extensive criminal history and the seriousness of her offenses." (*Id.* 24–25.)

In her Reply, Evans argues that she need not "re-exhaust" her administrative request for compassionate release with the BOP as the relevant statute does not require an inmate to do so. (Reply 4, ECF No. 40.) Evans further contends that "it is unclear what the government thinks is missing [from her claim] or why she would be required to re-exhaust. . . . The only possibility that occurs to defense counsel is the infiltration of COVID-19 at FPC Alderson." (*Id.* 7.)

Since the United States filed its Opposition on October 23, 2020, the number of COVID-19 cases at FPC Alderson has doubled. The BOP now reports eleven COVID-19 cases at FPC Alderson. *See* Bureau of Prisons, *COVID-19*, https://www.bop.gov/coronavirus/.

## II. Legal Standard: Compassionate Release Under the First Step Act of 2018

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[3] Prior to the First Step Act in 2018, the BOP had the sole authority to petition

---

[3] Section 3582(c)(1)(A) states:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term

5

the court for sentence modifications on compassionate release grounds. *Coleman v. United States*, No. 4:17-cr-69, 2020 WL 3039123, at *1 (E.D. Va. June 4, 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction."[4] *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir.

---

of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

[4] United States District Court Judge Cynthia M. Rufe recently explained the reasoning behind the passage of Section 603(b) in the First Step Act:

> In 2018, recognizing the BOP's grim history of approving compassionate release requests, and in an effort to expand the use of compassionate release sentence reductions, Congress passed the First Step Act. The title of the First Step Act's provision that enacted the exhaustion regime is 'Increasing the Use and Transparency of Compassionate Release' and under the new regime, the exhaustion requirement is met if the defendant establishes either (1) that the Bureau of Prisons denied his or her request that it bring a compassionate-release motion and he or she fully exhausted all administrative appeal rights with respect to that denial, or (2) that the warden of the facility took no action on his or her request for the filing of a compassionate-release motion within 30 days of receiving it. Significantly, Congress intended the 30-day exhaustion period to be an accelerant, not a barrier, to judicial review.

*United States v. Tidwell*, No. CR 94-353, 2020 WL 4504448, at *2 (E.D. Pa. Aug. 5, 2020) (internal quotation marks, citations, and alterations omitted). In *Tidwell*, Judge Rufe granted compassionate release to a 62-year-old terminally ill defendant with a life expectancy of less than one year. *Id.* at *1. The defendant in that case had been incarcerated since 1994 for committing numerous crimes, including two counts of murder in furtherance of a continuing criminal enterprise. *Id.*

2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)).

### A. Exhaustion of Administrative Remedies

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18-cr-4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020).

The court may waive the exhaustion requirement, however, in certain circumstances. *United States v. Jones*, No. 3:11-cr-249, ECF No. 47, at *2–3 (E.D. Va. Apr. 3, 2020) (Lauck, J.) Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]" "'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of agency review would subject the petitioner to undue prejudice.'" *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v. United States*, No. 2:09-cr-109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (Jackson, J.)).

Throughout the country, courts have found the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement. *See United States v. Zukerman*, 451 F. Supp. 3d 329, 332–33 (S.D.N.Y. 2020) (holding that defendant's elderly age and serious health conditions warrant a waiver of exhaustion requirements because of the ongoing risk of infection while

7

incarcerated); *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

### B. Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission further defines "extraordinary and compelling reasons."[5] U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15-cr-00073, ECF No. 109, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(D).[6] However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

---

[5] The United States Court of Appeals for the Fourth Circuit recently explained in an unpublished decision that "[t]he Sentencing Commission's policy statements . . . control the disposition of [compassionate release motions], and not the BOP program statements, based on Congress' statutory directives." *United States v. Taylor*, No. 20-6575, 2020 WL 5412762, at *1 (4th Cir. Sept. 9, 2020) (citing 18 U.S.C. § 3582(c)(1)(A); 28 U.S.C. § 994(t)).

[6] The United States Sentencing Guideline § 1B1.13 provides that:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
> (1) (A) extraordinary and compelling reasons warrant the reduction; or

8

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19-cr-112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citing *United States v. Dungee*, No. 7:15-cr-0005, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020); *United States v. Edwards*, 6:17-cr-0003, 2020 WL 1650406, at *5 (W.D. Va. Apr. 2, 2020)). Several courts have held that "the fear of contracting a communicable disease" alone cannot be considered an "extraordinary and compelling reason" to justify a sentence modification. *Id.* (citing *United States v. Clark*, No. 17-cr-85, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020) (internal quotation marks and emphasis omitted)).

### C. Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the § 3553(a) factors and any relevant postconviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant."

---

> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

The Guidelines policy statement concerning compassionate release further instructs Courts to consider the 18 U.S.C. § 3142(g) factors. U.S.S.G. § 1B1.13. These include "the nature and circumstances of the offense charged . . . ; the history and characteristics of the person . . . ; [and,] the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

### III. Analysis

After due consideration, the Court will grant Evans's Motion. Despite the BOP's best efforts to prevent the spread of COVID-19, FPC Alderson currently houses eleven inmates with the virus. The number of inmates with positive COVID-19 tests has doubled since Evans filed the instant Motion just over one month ago. The spread of this virus within FPC Alderson—considered alongside Evans's health concerns, lengthy state sentence followed by geriatric parole, and two years of federal incarceration with good conduct—now weigh in favor of granting Evans compassionate release.

**A. Evans Meets the Exhaustive Requirement Because the Warden at FPC Alderson Received and Denied Her Administrative Request Over Thirty Days Ago and § 3582(c) Does Not Require Re-Exhaustion**

The Court again determines that Evans met the exhaustion requirement before seeking relief from this Court. Generally, a defendant must exhaust "all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier" before a court can modify a sentence. 18 U.S.C. § 3582(c)(A)(1). On June 10, 2020, Evans submitted her request to the Warden of FPC Alderson "asking for [c]ompassionate release

10

under the COV[I]D-19." (Opp'n Ex. 2 "Inmate Request to Staff," ECF No. 32–2.) Twenty days later, on June 30, 2020, the Warden denied her request for compassionate release. (Opp'n Ex. 3 "Denial Letter," ECF No. 32–3.) Roughly three weeks later, on July 15, 2020, Evans filed her initial motion for compassionate release.

Although the United States argues that Evans must begin anew the administrative exhaustion process in the BOP, the statute requires only that a defendant give the BOP a chance to first evaluate a compassionate release request. *See, e.g., McCoy v. United States*, No. 2:03-cr-197, 2020 WL 2738225, at *1 (E.D. Va. May 26, 2020) (granting motion for reconsideration of compassionate release without requiring inmate to re-exhaust administrative remedies). Evans provided BOP that chance when she made her request to the Warden of FPC Alderson on June 10, 2020, less than six months ago. She need not apply to the BOP twice before seeking reconsideration of her Motion for Compassionate release in this Court.

In any event, the Court may waive the administrative exhaustion requirement where circumstances warrant doing so.[7] Alternatively, the Court chooses to waive any administrative exhaustion requirement here, because further delay would result in prejudice to Evans should she contract COVID-19 while incarcerated. After considering the exhaustion of Evans's administrative remedies, the Court turns to the merits of the Motion.

### B. Evans's Medical Conditions Constitute "Extraordinary and Compelling" Reasons for a Sentence Reduction and the Conditions at FPC Alderson Present a Particularized Risk to Evans for Contracting the Virus

Evans satisfies the first prong for compassionate release because her medical conditions increase the risks she faces should she contract COVID-19. Additionally, Evans advances a

---

[7] Moreover, the Court denied Evans's initial Motion for Compassionate Release without prejudice. (ECF No. 36.)

11

particularized fear of getting COVID-19 while incarcerated because the virus is now present and spreading in FPC Alderson.

Here, the Court previously recognized that Evans's underlying health conditions heighten her risk of complications from COVID-19. Specifically, Evans's Type 2 diabetes mellitus, Body Mass Index (BMI) of 36.4, and hypertension represent areas of concern.[8] (Aug. 31, 2020 Mem Op. 9.) In prior briefing, the United States conceded that Evans's health conditions constituted extraordinary and compelling circumstances. (Opp'n 9, ECF No. 32.) In response to the Motion at bar, the United States makes no argument in its renewed opposition that Evans's health has changed or otherwise improved. (*See* Opp'n, ECF No. 39.) The Court previously concluded, however, that Evans "fail[ed] to fully show an extraordinary and compelling reason for compassionate release, however, because she does not face a 'particularized risk' of contracting the virus." (*Id.* (citation omitted).)

Over the past three months circumstances have changed. Between August 31, 2020, when the Court issued its Memorandum Opinion denying Evans relief, and the filing of the instant Motion on October 16, 2020, FPC Alderson witnessed its first COVID-19 case. The virus has continued spreading throughout the facility despite BOP's efforts to contain it. As of November 30, 2020, Alderson reports that eleven inmates have become infected with COVID-19. *See* Bureau of Prisons, *COVID-19*, https://www.bop.gov/coronavirus/. Considering these drastically changed circumstances, Evans now fully shows an extraordinary and compelling reason for compassionate release because she faces "a particularized risk" of contracting the virus in FPC Alderson.

---

[8] The Court also notes that Evans has a history of breast cancer after being diagnosed with it in "2016 while in [Virginia Department of Correction's] custody." (Mot. 8.) Evans most recently received a "mammogram on January 27, 2020" that "[was] negative for growths." (*Id.* 9.)

12

## C. Evans Does Not Pose a Danger to the Community

As the Court previously determined, (Aug. 31, 2020 Mem Op. 10–11), Evans satisfies the second prong of the compassionate release analysis because she does not pose a danger to the community. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.

Evans previously supported her argument that she does not pose a danger to the community by noting that the Virginia Department of Corrections "granted her geriatric parole and released her in October 2018, nearly three years" before she "was scheduled to be released." (Mot. Comp. Release 24, ECF No. 30.) The United States, for its part, did not directly address this factor in its Opposition to Evans's initial Motion for Compassionate Release, and previously recognized that Evans "has not incurred any infractions while incarcerated at Alderson." (Opp'n 3, ECF No. 32.) In response to the Motion at bar, the United States makes no argument in its renewed opposition that Evans poses a danger at this time. (*See* Opp'n, ECF No. 39.) Considering the Parties' submissions, and because no evidence before the Court suggests that Evans presents "a danger to the safety of any other person or to the community," the Court again finds that Evans satisfies this second prong. 18 U.S.C. § 3582(c)(1)(A).

## D. In Light of the COVID-19 Virus Present at FPC Alderson, the Court Finds the Serious Health Risks Facing Evans During the Ongoing Pandemic Necessitate Granting Her Compassionate Release

Evans satisfies the third prong necessary to gain compassionate release because the risks associated with the ongoing pandemic outweigh the Section 3553(a) factors applicable to Evans. *See* 18 U.S.C. § 3582 (c)(1)(A); U.S.S.G. § 1B1.13.

The virus's presence at FPC Alderson has altered the calculation here. First, the Court considers Evans's "history and characteristics." 18 U.S.C. § 3553(a)(1). Evans pled guilty to one count of Bank Robbery. (*See* PSR ¶ 2.) At forty-two years old, Evans came before the

Court with a Criminal History Category of VI after committing a variety of offenses as an adult. (*Id.* ¶ 79.) Evans committed serious crimes, but "evidence of postsentencing rehabilitation may plainly be relevant to the history and characteristics of the defendant." *Pepper v. United States*, 562 U.S. 476, 491 (2011) (internal quotation marks and citation omitted); *see also Martin*, 916 F.3d at 398 (requiring the district court to consider postconviction "mitigation evidence that [defendant] proffered post sentencing"). Here, Evans demonstrates through Virginia's decision to grant her geriatric parole after eighteen years in state prison and her good conduct while incarcerated for more than two years in federal prison that her history and characteristics have changed. Twenty years after her federal sentencing, Evans comes to this Court showing marked and sustained rehabilitation for her crimes, in addition to serious health conditions coupled with the presence of COVID-19 at her prison facility, which could prove critically dangerous to Evans should she contact the virus. At age 62, Evans's history and characteristics weigh in favor of compassionate release.

Second, the Court considers the "seriousness of the offense." 18 U.S.C. § 3553(a)(2)(A). Evans robbed Union Bank and Trust Company of $1,765 with "a large knife." (PSR ¶¶ 5, 9.) Though Evans's crime of violence does not weigh in favor of granting release, the Court recognizes that Evans has served twenty years in prison, after combining her state and federal terms, for her underlying string of bank robberies that she committed over a six-week period.[9]

---

[9] As this Court previously observed, Evans remarked in her initial Reply on the fact that she committed a series of robberies for which three different jurisdictions prosecuted her. Evans asserted that

> [h]ad [she] been sentenced for all five robberies in federal court, the United States Sentencing Guidelines would have been higher than for her sole bank robbery. While defense counsel cannot calculate what would have been the official guidelines for all five robberies, counsel assumes that 5 units would have been added for a combined adjusted offense level of 30, minus 3 for acceptance of responsibility, for a total of 27. With the same criminal history category of VI, her

14

Additionally, Evans was one of the few state inmates granted geriatric parole in Virginia based on both her good behavior while incarcerated and her health. Therefore, even though the seriousness of her offense weighs against release, the Court finds that the length of Evans's combined state and federal sentence substantially mitigates this factor.

Finally, Evans has served approximately twenty-five months of her eighty-four-month federal sentence. While this is not a high percentage of her *federal* sentence, Evans presents unique circumstances: she has served an 18-year state sentence and 2 years in federal prison. This Court will not view her federal sentence in a vacuum without acknowledging her 18 years in state custody. Evans now comes to the Court at "62 years old, diabetic and [having suffered] breast cancer while in prison. She accepts the punishments that were imposed, but she does not want to die in prison." (Reply 19.) The Court finds that because Evans has served more than two years in federal prison and eighteen years in state prison for a string of bank robberies, such combined sentence provides just punishment and affords adequate deterrence for like offenses. 18 U.S.C. § 3553(a)(2)(A)–(B).

This Court acknowledges that it considered the length of time Evans had served in federal custody to be of consequence when denying Evans's First Motion for Compassionate Release. But the Court evaluated Evans's request for compassionate release without the presence of COVID-19 at FPC Alderson. Undoubtedly, Evans now faces a more serious risk than she did three months ago when the virus had not entered her facility.

---

> guidelines would have been 130 to 162 months. Since Ms. Evans was sentenced by three jurisdictions instead of one, she has been incarcerated for approximately 247 months.

(Reply 10 n.13, ECF No. 34.) The Court lacks sufficient information regarding Evans's other robberies to verify the merit of this argument. The Court cannot discern from the record why three jurisdictions elected to separately prosecute Evans for a series of robberies that were relatively close in time and geographical proximity.

In sum, the ongoing pandemic and health risks Evans faces weigh in favor of granting compassionate release. Because Evans presents an "extraordinary and compelling reason" for granting compassionate release and she now faces "a particularized risk" of contracting the virus at Alderson, the Court will grant the Motion.

## IV. Conclusion

For the foregoing reasons, the Court will grant Evans's Emergency Renewed Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) (the "Motion"). (ECF No. 37.)

An accompanying order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: December 2, 2020
Richmond, Virginia